IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| Douglas Fauconier, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:14cv1692 (TSE/JFA) |
| | ) | |
| Harold W. Clarke, et al., | ) | |
|     Defendants. | ) | |

## MEMORANDUM OPINION

Douglas Fauconier, a Virginia inmate acting pro se, has filed a civil rights action, pursuant to 42 U.S.C. § 1983, alleging that his rights under both the Constitution and the Americans with Disabilities Act ("ADA") were violated when he was removed from his position as a houseman at Powhatan Correctional Center ("PCC"). The matter is now before the Court on defendants' Motion to Dismiss for Failure to State a Claim, to which plaintiff has filed a Motion in Opposition. Also pending are two motions by plaintiff pertaining to the filing fees for this action and an earlier appeal. For the reasons which follow, defendants' Motion to Dismiss will be granted, plaintiff's Motion in Opposition will be denied, and plaintiff will remain obligated to pay the applicable filing fees.

### I. Facts

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). So construed, the facts giving rise to the plaintiff's claims are as follow:

Plaintiff Douglas Fauconier is an inmate committed to the custody of the Virginia Department of Corrections ("VDOC"). Compl. ¶ 1. Defendant Harold W. Clarke is the Director

of VDOC. Compl. ¶ 8. Defendant Jeffery N. Dillman is the former warden of Powhatan Correctional Center ("PCC"), a VDOC facility that is now closed. Compl. ¶ 10. Defendant Luke Isaiah Black was the Institutional Programs Manager at PCC during the time period relevant to this action, and "oversaw the functioning of all programs at the prison." Compl. ¶ 12. Defendant Lakenesha Spencer was a counselor at PCC who was "responsible for determining whether a prisoner [met] eligibility requirements for available prison employment." Compl. ¶ 14.

In 2010, plaintiff was confined at PCC. Prior to that time, and during his incarceration at PCC, he was employed in various institutional positions. Compl. ¶¶ 16-18. On October 14, 2010, plaintiff was transferred to the Medical College of Virginia ("MCV") for a "very brief" period. Compl. ¶¶ 19-20. When he returned to PCC and to his original housing unit plaintiff re-applied for the houseman position he had held prior to his hospitalization, and he was not re-hired. Compl. ¶ 24. Plaintiff's medical condition was given as the reason for the denial of institutional employment, and at the time he filed the complaint he had remained unable to obtain such employment since 2010. Compl. ¶ 24 & Ex. 2 at pp. 2-3, 6. Other inmates with prior periods of hospitalization for unspecified conditions have been able to maintain such employment. Compl. ¶ 27.

On October 30, 2013, plaintiff submitted an informal complaint regarding his inability to obtain institutional employment. Compl. ¶ 31. Defendant Black responded that plaintiff was ineligible for employment because he had been assigned medical classification code "D." Compl. ¶ 32 & Ex. 1 at p. 2. On November 11, 2013, plaintiff submitted a regular grievance as to the same issue, and defendant Dillman responded that plaintiff had been assigned medical code "D" was therefore was "ineligible to work at this time." Compl. ¶¶ 33-34 & Ex. 1 at p. 4, Ex. 2 at p. 4.

2

Pursuant to VDOC Operating Procedure 720.2, "Medical Screening, Classification and Levels of Care," each inmate receives a "medical activity classification" that is "assigned by the physician according to the "Medical & Location Codes" set out in VDOC's Nursing Guidelines. Those guidelines state that a medical code of "D" means that the offender has been deemed medically ineligible to obtain institutional employment, and that he further is restricted to "[n]o sports activity except walking."[1] Def. Mem., Ex. 1-2.

Plaintiff was transferred to Augusta Correctional Center on October 22, 2014. Compl. ¶ 1, n.1. He filed this action on December 3, 2014.[2] Compl. at p. 5.

## II. Claims

As construed by the Fourth Circuit Court of Appeals, plaintiff alleges the following claims:

1. He suffered disability discrimination in violation of Title II of the ADA.

2. His right to equal protection was violated, for which relief is warranted pursuant to 28 U.S.C. § 1983.[3]

---

[1]Plaintiff does not identify the nature of his illness in the complaint. On appeal from a previous dismissal of his claims, however, he explained that he suffers from myasthenia gravis, a neuromuscular disease for which he was hospitalized on several occasions. See Fauconier v. Clarke, R. No. 15-6109 (4th Cir. June 20, 2016), slip op. at 4, n. 4; Dkt. No. 21.

[2]A pleading submitted by an unrepresented inmate is deemed filed when it is delivered to prison officials for mailing. Houston v. Lack, 487 U.S. 266 (1988). Here, plaintiff's certificate of service in the complaint is dated December 3, 2014. Compl. at 5.

[3]Upon initial review of the complaint, the claims were dismissed pursuant to 28 U.S.C. § 1915A for failure to state a claim. Mem. Op., Dkt. No. 4. On appeal, the United States Court of Appeals for the Fourth Circuit vacated and remanded to allow this Court to address issues regarding equal protection, injunctive relief, and qualified immunity in the first instance. See n. 1, supra. In addition to the claims under discussion here, Fauconier initially also contended that his right to due process was violated by defendants' failure to reinstate his work assignment, and he did not challenge the dismissal of that claim on appeal. Fauconier, slip op. at 10.

3

## III. Standard of Review

Rule 12(b)(6) allows a court to dismiss those allegations which fail "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When determining whether a motion to dismiss should be granted, the alleged facts are presumed true and the complaint should be dismissed only when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. ----, ----, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet this standard, id., and a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level...." Twombly, 550 U.S. at 55.

## IV. Analysis

### A. The claims are time-barred

Defendants make several meritorious arguments in favor of dismissal of the complaint in this action. As a threshold and dispositive matter, they point out correctly that both of plaintiff's claims are time-barred.[4]

---

[4] A court appropriately may adjudicate a statute of limitations defense raised in a Rule 12(b)(6) motion to dismiss if "all facts necessary to the ... defense clearly appear[] on the face of the complaint." Goodman v. PraxAir, Inc., 494 F.3d 458, 464 (4th Cir. 2007); accord, United States v. Kivanc, 714 F.3d 782, 789 (4th Cir. 2013) ("The statute of limitations is an affirmative defense that may be raised in a Rule 12(b)(6) motion to dismiss for failure to state a claim.").

4

1. ADA Claim

"Title II of the ADA does not contain a statute of limitations." A Society Without a Name, for People without a Home, Millennium Future-Present v. Va., 655 F.3d 342, 347 (4th Cir. 2011). Accordingly, federal courts "borrow the state statute of limitations that applies to the most analogous state-law claim." Id. Applicable precedent in this circuit teaches that "the one-year limitations period in the Virginia Disabilities Act applies to ADA claims brought in Virginia." Id. at 348. Causes of action accrue under federal law when the plaintiff "possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." Nasim v. Warden, Md. House of Corr., 64 F.3d 951, 955 (4th Cir. 1995). Consistent with that general principle, an ADA claim accrues and the statute of limitations begins to run when the plaintiff knows or has reason to know of his injury. A Society Without a Name, 655 F.3d at 347-48.

Based upon the allegations in the complaint, it cannot be gainsaid that plaintiff was aware that he was being denied institutional employment because of his medical classification code by 2010. Plaintiff alleges that his "very brief" hospitalization at MCV commenced on October 14, 2010, and when he was returned to PCC he was not re-hired as a houseman because of his medical condition. Compl. ¶¶ 19-20, 24. Even more telling, he submitted an informal and then a formal complaint regarding his inability to obtain institutional employment specifically referencing the ADA in October and November, 2013. Compl. ¶¶ 31, 33. The denials of both complaints were expressly based on plaintiffs assignment of medical classification code "D." Compl. ¶¶ 32, 34. & Ex. 1 at p. 2. Nonetheless, plaintiff did not file this action until December 3, 2014, over a year after he knew or had reason to know of the violation of his rights under the ADA. See n. 2, supra. Accordingly, because the untimeliness of plaintiff's ADA claim is

5

apparent on the face of the complaint, it is subject to dismissal pursuant to Rule 12(b)(6).

2. § 1983 Equal Protection Claim

An action arising under § 1983 borrows the forum state's limitations period for personal injury actions. Owens v. Okure, 488 U.S. 235, 249-50 (1989). Virginia's limitations period for personal injury claims is two years. Va. Code § 8.01-243(A). As with ADA claims, federal law governs the date on which that limitations period begins to run, Owens v. Baltimore City State's Att'y's Office, 767 F.3d 379, 388 (4th Cir. 2014), and a § 1983 cause of action accrues when the plaintiff "possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." United States v. Kubrick, 444 U.S. 111, 122-24 (1979).

Plaintiff alleges on the face of the complaint that he was denied his former position as a houseman when he returned from his brief stay at MCV in October, 2010. He further states that other inmates who were returned to the facility "months later" were reinstated in their former work assignments in PCC's Unit D-8 without having to re-apply for those positions. Compl. ¶ 27. In addition, plaintiff has attached as an exhibit to the complaint a job application which denied him participation in an offender work program based upon "medical work code D - per policy" on June 26, 2012. Consequently, by June, 2012 at the latest, Fauconier clearly was aware of "sufficient facts about the harm done to him that reasonable inquiry" would have revealed his cause of action. Because this action was not filed until December 3, 2014, over two years later, the § 1983 equal protection claim is time-barred.

3. Plaintiff's Arguments

In his opposition to the Motion to Dismiss, plaintiff makes two arguments in an attempt to rebut the defendants' position as to the timeliness of his claims. First, plaintiff contends that application of the continuing violation doctrine is appropriate here, and renders his ADA claim

6

timely filed. [Dkt. No. 56 at 5-7] This argument is unavailing, because the doctrine upon which plaintiff seeks to rely has no relevance to his case. To establish a continuing violation, a plaintiff must show "a series of separate acts" where "the same alleged violation is committed at the time of each act." This is distinguishable from the continuing ill effects of a single original violation. See A Society Without a Name, 655 F.3d at 348. The fact that Fauconier was informed each time he applied for prison employment that VDOC policy did not permit an inmate whose medical classification code was "D" to work was nothing more than the ongoing effect of the determination made by VDOC to enact that policy, such that "the same alleged violation [was] committed at the time of each act." Thus, the ADA claim Fauconier raises is time-barred. See id. at 349 (finding equal protection claims time-barred where neither continuation of homeless services at old facility or addition of services at new facility constituted continuing violations, but rather amounted to continuing effects of the challenged decision which occurred more than two years before the § 1983 suit was filed).

Second, plaintiff argues that both the ADA and the equal protection claim are timely because the relevant statutes of limitation were tolled while he exhausted his administrative remedies. This position is predicated on a doctrine which has not been recognized in the Fourth Circuit.[5] Moreover, assuming without deciding that such tolling did apply in this case, it was insufficient in duration to render either of Fauconier's claims timely. According to Fauconier, he started the grievance process on October 30, 2013, when he filed an Informal Complaint. [Dkt.

---

[5] The Fourth Circuit has not addressed whether the statute of limitations is tolled in a § 1983 action while a prisoner is exhausting his administrative remedies. Other courts of appeal have allowed such tolling. See, e.g., Flowers v. Phelps, 514 F. App'x 100, 101 n. 3 (3d Cir. 2013); Gonzalez v. Hasty, 651 F.3d 318, 323–24 (2d Cir. 2011); Bloom v. McPherson, 346 F. App'x 368, 371 (10th Cir. 2009); Brown v. Valoff, 422 F.3d 926, 943 (9th Cir. 2005); Clifford v. Gibbs, 298 F.3d 328, 333 (5th Cir. 2002); Johnson v. Rivera, 272 F.3d 519, 522 (7th Cir. 2001); Brown v. Morgan, 209 F.3d 595, 596 (6th Cir. 2000).

No. 56 at 6] His unsuccessful attempts to obtain administrative relief culminated on January 8, 2014, when the Regional Administrator denied Fauconier's appeal from the unfavorable decision of PCC's warden. Id. In all, then, Fauconier's administrative efforts spanned a total of 69 days.

Allowing the pro se plaintiff the most deferential interpretation possible, he became aware of "sufficient facts about the harm done to him that reasonable inquiry" would have revealed his causes of action at the latest on June 26, 2012, when he received written denial of his application to participate in an offender work program based upon "medical work code D - per policy."[6] [Dkt. No. 1, Ex. 2] The one-year period for the timely filing of an ADA claim consequently expired on June 26, 2013. Since Fauconier did not commence the administrative exhaustion process until October 30, 2013, over four months later, those efforts could no longer toll the ADA limitations period, because the period no longer existed. See generally, Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir. 2003) ("[S]ection 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed."); Webster v. Moore, 199 F.3d 1256, 1259 (11th Cir. 2000) (holding that a state postconviction motion filed after expiration of the limitations period cannot toll the period, because there is no period remaining to be tolled); Rashid v. Khulmann, 991 F.Supp. 254, 259 (S.D.N.Y. 1998) ("Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations.")

As to Fauconier's equal protection claim, the two-year § 1983 limitations period also began to run no later than June 26, 2012. By the time he filed his Informal Complaint on October 30, 2013, one year and 125 days had passed. After the administrative process concluded with the

---

[6]Since plaintiff states that he was denied reinstatement of his former houseman position when he was returned to PCC from his hospital stay in October 14, 2010, Compl. ¶¶ 19-20, 24, a plausible argument exists that the limitations period for plaintiff's claims actually began to run then, more than two years before the date used for the calculations set out here.

Regional Administrator's decision on January 8, 2014, another 328 days elapsed until this federal action was filed on December 3, 2014. In all, then, assuming *arguendo* that the §1983 limitations period was tolled during the pendency of Fauconier's administrative proceedings, two years and 88 days of untolled time elapsed between June 26, 2012, the date Fauconier undeniably became aware of his claim, and December 3, 2014, the date the complaint in this action was filed. Accordingly, Fauconier's equal protection claim also is time-barred.

### B. The Allegations Do Not State Plausible Claims for Relief[7]

#### 1. ADA Claim

Even if plaintiff's claims had been filed timely, neither plausibly states a claim upon which relief can be granted. To state a claim under Title II of the ADA, a plaintiff "must allege that (1) he has a disability; (2) he is otherwise qualified to received the benefits of a public service, program, or activity; and (3) he was excluded from participation in or denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of his disability." Spencer v. Early, 278 F. App'x 254, 261 (4th Cir. 2008). Plaintiff's allegations satisfy none of these criteria.

First, the ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). Fauconier alleges here that he had a brief hospital stay in 2010 and that he has an undefined "disability," but he otherwise makes no allegations to support a finding of a specific "physical or

---

[7]In its opinion remanding this matter for further consideration, the Fourth Circuit expressly found that the issue of the sufficiency of Fauconier's equal protection claim should be determined in the first instance by the district court. Fauconier, slip op. at 11-12. No argument as to the sufficiency of the ADA claim was raised or discussed in that proceeding.

9

mental impairment," much less one that "substantially limits" one of his "major life activities." It is well established that simply using the word "disability" without providing further context is insufficient to state an ADA claim, since not every medical diagnosis or condition is considered a "disability" within the meaning of that provision. See Toyota Motor Mfg., Ky. v. Williams, 534 U.S. 184, 198 (2002) ("It is insufficient for individuals attempting to prove disability status ... to merely submit evidence of a medical diagnosis of an impairment."); Young v. City of Mt. Rainier, 238 F.3d 567, 577 (4th Cir. 2001) ("The presence ... of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support a finding of [liability].").

Second, even if plaintiff could show that he has a physical impairment that qualifies as a "disability" under the ADA, he cannot establish that he was denied a "benefit" for which he otherwise was qualified. That is so because Virginia offenders like Fauconier to whom the medical classification code "D" have been assigned are automatically disqualified from participating in offender work programs. Thus, the denial of Fauconier's employment applications did not deny him a benefit to which he was otherwise entitled.

Third, nowhere does Fauconier plausibly allege that his disqualification from offender work programs "stemmed from any discriminatory intent due to any alleged disability." Spencer v. Easter, 109 F. App'x 571, 573 (4th Cir. 2014). Nor can any such implication be gleaned from the exhibits he has supplied, which uniformly indicate instead that work assignments were denied on the basis of his medical classification. Accordingly, plaintiff "fails to establish a prima facie claim under the ADA." Id.

In addition to the foregoing reasons why plaintiff fails to state a claim for relief under Title II of the ADA, he also fails plausibly to allege an underlying constitutional violation, for the
10

reasons which will be discussed below. That failure is also fatal to any claim under the ADA. See United States v. Georgia, 546 U.S. 151, 159 (2006).

2. Equal Protection Claim

It is well established that "[t]o succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). "Once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." Id. "Generally, in determining whether persons are similarly situated for equal protection purposes, a court must examine all relevant factors." United States v. Olvis, 97 F.3d 739, 744 (4th Cir. 1996). The focus of the inquiry is whether the plaintiff can "identify persons materially identical to him or her who ha[ve] received different treatment." Kolbe v. Hogan, 813 F.3d 160, 185 (4th Cir. 2016) ( Agee, J., concurring). To satisfy this requirement, "the 'evidence must show a high degree of similarity'" - that is, "'apples should be compared to apples.'" Id. (quoting LaBella Winnetka, Inc. v. Village of Winnetka, 628 F.3d 937, 942 (7th Cir. 2010); Barrington Cove Ltd. P'ship v. R.I. Hous. & Mortg. Fin. Corp., 246 F.3d , 8 (1st Cir. 2001)).

Fauconier's allegations do not satisfy these requirements. He does not allege or identify any other inmates who have been assigned medical classification code "D" who have been permitted to work. To the extent that he makes general allegations that other inmates with unidentified medical issues have been able to obtain institutional employment, he does not make an apples-to-apples comparison. Inmates who are assigned different medical classification codes than plaintiff's are not in a situation that is "materially identical" to his. Absent plausible allegations that Fauconier was treated differently than other, similarly-situated individuals, he fails

to state an equal protection claim. See O'Bar v. Pinion, 953 F.2d 74, 82 (4th Cir. 1991) (reversing judgment in favor of a plaintiff on an a equal protection claim where failed to identify "any other inmate ... who did not also lose work privileges in such circumstances," and "no other inmate [was] identified as being in factual circumstances close to those of" the plaintiff); Hatcher v. Salyers, 2008 WL 686758, *3 (W.D. Va. Mar. 13, 2008) (allegations failed to state a state of unequal treatment where plaintiff "utterly fail[ed]" to allege facts indicating that he and other inmates had similar medical problems).

Moreover, Fauconier also fails to allege that any perceived difference in his treatment was the result of intentional or purposeful discrimination. To state an equal protection claim, a plaintiff must set forth "specific, non-conclusory factual allegations that establish improper motive." Williams v. Hansen, 326 F.3d 569, 584 (4th Cir. 2003). In this case, Fauconier alleges only that the application of a neutral VDOC policy prevented him from obtaining institutional employment; he makes no allegation whatever that any defendant was motivated to do so by discriminatory animus. For these reasons, Fauconier fails to state an actionable claim for denial of his right to equal protection.

**C. Limitations on Relief**

Fauconier has brought his claims against all four defendants in this action in their official and individual capacities, seeking both monetary damages and injunctive relief. In addition to the untimeliness and substantive insufficiency of Fauconier's claims, several of these claims failure to state cognizable bases for relief.

1. Official Capacity Claims Pursuant to § 1983

Neither a state nor a state official acting in his or her official capacity is a "person" for purposes of § 1983 liability. Will v. Michigan Dep't of State Police, 492 U.S. 58 (1989).

Therefore, defendants are immune in their official capacities from claims for monetary damages for alleged civil rights violations.

In addition, to the extent that Fauconier seeks prospective injunctive relief pursuant to § 1983, his claims are now moot. "Once an inmate is removed from the environment in which he is subjected to the challenged policy or practice ... he no longer has a legally cognizable interest in a judicial decision on the merits of his claim." Incumaa v. Ozmint, 507 F.3d 281, 287 (4th Cir. 2007). Here, defendants Dillman, Black and Spencer are alleged to have worked at PCC, an institution where Fauconier is no longer housed and which is now closed. And while defendant Clarke remains the director of VDOC, plaintiff alleges only that he has general control over VDOC policies, while plaintiff's claim is predicated not on the text of VDOC operating procedures but rather on the allegedly improper and discriminatory actions of officials at PCC. Under these circumstances, Fauconier's claims for injunctive relief also are now moot, and his official-capacity claims against the defendants must be dismissed in their entireties.

2. Official Capacity Claims Pursuant to Title II of the ADA

To the extent that Fauconier asserts official-capacity claims for damages under Title II of the ADA, the defendants are entitled to Eleventh Amendment immunity because the claims are not tied to a properly-alleged constitutional violation. See U. S. v. Georgia, 546 U.S. at 159 ("[I]nsofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity.") (emphasis original).

3. Individual Capacity Claims Pursuant to § 1983

To state a viable claim pursuant to § 1983, a plaintiff must show that each defendant was personally involved in a violation of plaintiff's constitutional rights. Trulock v. Freeh, 275 F.3d

391, 402 (4th Cir. 2001). Here, Fauconier has failed to identify any specific misconduct by any of the named defendants. As to Director Clarke, Fauconier alleges only that he "establishes the policies that govern DOC." Compl. ¶ 8. Such an allegation, standing alone, does not state or even suggest that Director Clarke was personally involved in depriving plaintiff of a constitutional right. That Clarke occupies a supervisory position within VDOC is not a sufficient predicate to find him liable under §1983. See Iqbal, 556 U.S. at 676 ("[B]ecause vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.")

Fauconier's allegations with respect to defendants Black, Dillman and Spencer fare no better. Defendant Spencer is alleged only to have been "responsible for determining whether a prisoner meets eligibility requirements for available prison employment." Compl. ¶ 14. She is not alleged to have taken any action at all with respect to Fauconier personally. Defendant Black is alleged to have "overs[een] the functioning of all programs at" PCC and to have denied the Informal Complaint Fauconier filed when he was not re-hired as a houseman. Compl. ¶¶ 12, 32. Similarly, defendant Dillman is alleged to have been responsible "for the welfare of all prisoners" at PCC in his capacity as its warden, and to have deemed Fauconier's Regular Grievance "unfounded." Compl. ¶¶ 10, 33-34. None of these allegations is sufficient to state a claim against any defendant. No defendant is alleged to have made the disqualifying medical classification decision, nor is any defendant alleged are they alleged to have participated in discriminatory conduct against the plaintiff. To the extent that Fauconier bases his claims against Black and Dillman on their denials of his grievances, no liability exists under § 1983 for a prison administrator's response to a grievance or appeal. See Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994); Brown v. Va. Dep't Corr., No. 6:07-CV-00033, 2009 WL 87459, at *13 (W.D. Va. Jan. 9,

14

2009). Because no personal involvement by any defendant in the denial of Fauconier's rights is alleged, the complaint does no more than raise a "sheer possibility" that the defendants "acted unlawfully," and consequently fails to state a claim against any defendant for which relief can be granted. Iqbal, 556 U.S. at 678; see also, Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994) (discussing elements which must be affirmatively pled to state a claim for supervisory liability under § 1983); Pena v. Garder, 976 F.2d 469, 471 (9th Cir. 1992 ) ("Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss.").

### 4. Individual Capacity Claims Pursuant to Title II of the ADA

Lastly, to the extent that Fauconier seeks to hold the defendants liable in their personal capacities under the ADA, he states no cognizable predicate for relief. As the Fourth Circuit has noted, "the claim for damages under the ADA runs against the state, and not against the defendants individually." Fauconier, slip op. at 10. Consequently, the individual-capacity claims alleged under the ADA must be dismissed for failure to state a claim. City & County of San Francisco v. Sheehan, __ U.S. __, 135 S. Ct. 1765, 1773 (2015) ("Only public entities are subject to Title II.").

### E. Qualified Immunity

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009). "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" Malley v. Briggs, 475 U.S. 335, 341 (1986). Applying these principles here, reasonable prison officials would not have known that relying on Fauconier's doctor-established

medical classification to determine his employment eligibility would violate his right to equal protection. Consequently, even if an inmate's right to an individualized assessment of his fitness for employment *arguendo* did exist, as Fauconier implicitly argues, it was not clearly established when his applications for prison employment were denied..

For a right to be clearly established, it must be "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). "The dispositive question is 'whether the violative nature of particular conduct is clearly established.'" Ashcroft v. Al-Kidd, 563 U.S. 731, 742 (2011). "This inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" Brosseau v. Haugen, 543 U.S. 194, 198 (2004). Here, then, to avoid qualified immunity Fauconier would have to show that a reasonable prison official would have known that using an inmate's doctor-assigned medical classification as the basis for finding him ineligible for prison employment would constitute an equal protection violation.

Fauconier has not met and cannot meet that standard. He has cited no precedent for the proposition that a prison official violates the Equal Protection Clause by using an inmate's doctor-established medical classification as the basis for denying him prison employment, nor does such precedent exist. For a right to be clearly established "the 'contours' of the right [must be] clear to a reasonable official in a 'particularized' sense." Anderson, 483 U.S. at 640. Thus, it is insufficient to say "as a broad general proposition" that inmates have equal protection rights or that Title II applies in state prisons. Because there is no judicial authority to support the notion that a prison official may not rely on a doctor's assessment of an inmate's health in deciding whether he is fit to participate in an offender work program, the right to a particularized employment screening cannot be deemed clearly established.

Moreover, by using an inmates' doctor-established medical classifications in making decisions regarding prison employment, PCC officials were acting in accordance with a prison policy that was reasonably related to legitimate penological interests. "[T]he classifications and work assignments of prisoners ... are matters of prison administration, within the discretion of prison administrators...." Altizer v. Paderick, 569 F.2d 812, 813 (4th Cir. 1978). Prison officials may use categorical rules in administering institutions; they are not required to review each inmate's individual circumstances in making day-to-day management decisions. In light of this existing law, it does not "follow immediately" that a reasonable prison official would have known that relying on a doctor's medical classification in determining an inmate's employment eligibility would violate the Equal Protection Clause. For these reasons, the defendants would be entitled to qualified immunity against Fauconier's claims for money damages even if a claim of equal protection had been stated.

## V. Pending Motions

Also pending before the Court are two motions filed by the plaintiff. First, plaintiff seeks reconsideration of the denial of his request that defendants be required to reimburse the filing fee for his appeal of the earlier dismissal of his complaint. As discussed in that Order [Dkt. No. 38], Local Civil Rule 54(d)(1) requires a prevailing party to file a bill of costs within eleven (11) days from the entry of judgment. The appellate mandate issued on July 12, 2016 [Dkt. No. 23] and plaintiff did not deposit his Letter/Motion to Have Defendants Reimburse Filing Fee into the institutional mailing system until September 23, 2016. [Dkt. No. 31] Plaintiff's argument here that the untimely filing of his Letter/Motion was the result of "excusable neglect" and the alleged deficiency of his institutional law library is unconvincing, since plaintiff was represented on the appeal. Accordingly, his Motion for Reconsideration must be denied.

Plaintiff also has filed a Motion to Amend, in which he withdraws an earlier, admittedly mistaken request made in a Motion for Reconsideration of Court Order that the Court hold in abeyance the requirement that he pay the filing fee for this lawsuit. The Motion to Amend, construed as a Motion to Withdraw the Motion for Reconsideration, will be granted.

## VI. Conclusion

For the foregoing reasons, plaintiff's claims brought pursuant to Title II of the ADA and 42 U.S.C. § 1983 must be dismissed, with prejudice, as time-barred. Alternatively, both claims fail to state claims for which relief can be granted, and must be dismissed pursuant to Rule 12(b)(6). Plaintiff's claims for damages under the ADA and against the defendants in their official capacities must be dismissed as barred by the Eleventh Amendment, and his claim for damages against the defendants in their individual capacities must be dismissed on the ground of qualified immunity and because he fails to allege personal involvement by the defendants in the alleged deprivation of his rights. Plaintiff's claim for injunctive relief must be dismissed, as moot. Plaintiff's Motion for Reconsideration must be denied, and his Motion to Amend must be granted. An appropriate Order and judgment shall issue.

Entered this 20th day of March 2018.

Alexandria, Virginia

T. S. Ellis, III
United States District Judge